IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Heather L.,[1]                                         No. 1:22-cv-01652-HZ

               Plaintiff,                      OPINION & ORDER

     v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

               Defendant.


Betsy R. Shepherd
425 Riverwalk Manor Dr.
Dallas, GA 30132

        Attorney for Plaintiff

Kevin C. Danielson
Assistant United States Attorney
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this Opinion uses the same designation for a non-governmental party's immediate family member.

Noah Schabacker
Social Security Administration
Office of the General Counsel
6401 Social Security Blvd
Baltimore, MD 21235

      Attorneys for Defendant

HERNÁNDEZ, District Judge:

      Plaintiff Heather L. brings this action seeking judicial review of the Commissioner's final decision to deny disability insurance benefits ("DIB") and supplemental security income ("SSI"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1383(c)(3)). The Court affirms the Commissioner's decision.

## PROCEDURAL BACKGROUND

      Plaintiff applied for DIB and SSI on October 18, 2018, alleging an onset date of April 24, 2018. Tr. 225-226, 234-238.[2] Plaintiff's date last insured ("DLI") is June 30, 2022. Tr. 47. Her application was denied initially and on reconsideration. Tr. 45.

      On August 23, 2021, Plaintiff appeared with counsel for a hearing before an Administrative Law Judge ("ALJ"). Tr. 45. On September 15, 2021, the ALJ found Plaintiff not disabled. Tr. 55. The Appeals Council denied review. Tr. 1.

## FACTUAL BACKGROUND

      Plaintiff alleges disability based on arthritis, a functional movement disorder, a hypermobility disorder, psoriasis, depression, anxiety, insomnia, chronic back pain, memory issues, and polycystic ovarian syndrome. Tr. 259. At the time of her alleged onset date, she was

---

[2] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed herein as Docket No. 8.

32 years old. Tr. 54. She has at least a high school education and past relevant work experience as a receptionist. Tr. 53-54.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Disability claims are evaluated according to a five-step procedure. *See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Id.*

In step three, the Commissioner determines whether the claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform their "past relevant work."

20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can perform past relevant work, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f). If the Commissioner meets their burden and proves that the claimant can perform other work that exists in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after her alleged onset date. Tr. 47. Next, at steps two and three, the ALJ determined that Plaintiff has the following severe impairments: "psoriatic arthritis, morbid obesity, and obstructive sleep apnea." Tr. 47. However, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 49. At step four, the ALJ concluded that Plaintiff has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) with the following limitations:

> [T]he claimant can occasionally climb ramps and stairs but can never climb ladders, ropes or scaffolds. She can occasionally balance, stoop, kneel, crouch and crawl. The claimant must avoid concentrated exposure to extreme cold temperatures and extreme hot temperatures. She must avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc. She must avoid even moderate exposure to workplace hazards such as dangerous machinery and unprotected heights.

Tr. 50. Despite these limitations, the ALJ concluded that Plaintiff could perform her past relevant work as a receptionist. Tr. 53. At step five, the ALJ also found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as "Semiconductor Bonder," "Call out operator," and "Charge account clerk." Tr. 55. Thus, the ALJ concluded that Plaintiff is not disabled. Tr. 55.

**STANDARD OF REVIEW**

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings "are based on legal error or are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's.") (internal quotation marks omitted).

**DISCUSSION**

Plaintiff argues that the ALJ erred by (1) discounting her subjective symptom testimony, (2) rejecting as unpersuasive the medical opinion of her treating rheumatologist, Dr. Dominik Sokalski, and (3) failing to discuss the lay witness statements of her spouse and father. Pl. Op. Br., ECF 16. Plaintiff asserts that based on the foregoing errors, the hypothetical the ALJ posed to the Vocational Expert ("VE") was incomplete. *Id.* The Court concludes that the ALJ did not harmfully err and therefore affirms the Commissioner's decision.

//

//

## I.    Subjective Symptom Testimony

The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). The ALJ engages in a two-step analysis for subjective symptom evaluation. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (superseded on other grounds). First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (internal quotations omitted). Second, "if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms." *Id.* (internal quotations omitted).

When evaluating subjective symptom testimony, "[g]eneral findings are insufficient." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). "An ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). Instead, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195 (9th Cir. 2001); *see also Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discount the claimant's testimony.").

Plaintiff previously worked as veterinary assistant. Tr. 28. She stopped working full-time in April 2018, when she started having tremors and developed psoriatic arthritis, and her

hypermobility worsened. Tr. 28-29. Plaintiff testified that she could not work with the tremors because she could not hold a pen. Tr. 29. Her entire body would shake. Tr. 29. Plaintiff testified that she still worked part-time by posting things on Facebook for the veterinarian she used to work for. Tr. 28. She worked no more than five hours a week. Tr. 28. She worked from home. Tr. 28. Sometimes her husband had to type the content for her. Tr. 28.

Plaintiff testified that she used a walker in the past but no longer used one. Tr. 25. Since February 2019, she uses leg braces. Tr. 25. The braces are custom braces that go from the top of her thigh past her knee. Tr. 26. She uses them for walking. Tr. 26. She needs them for hypermobility and because her knees dislocate very easily. Tr. 26. She wears the braces both at home and when she goes out. Tr. 26. She does not use a cane or other assistive device. Tr. 26. Plaintiff testified that she can only wear the braces for a few hours at a time. Tr. 27.

Plaintiff testified that she lived with her husband and her parents because her parents had moved in to help out. Tr. 25. Plaintiff testified that she stopped driving in April 2018, when she had the movement disorder with constant tremors. Tr. 27. She did not resume driving because her joints dislocate easily, and she did not think it was safe to drive when her wrists could dislocate. Tr. 27. Her father or her husband took her to medical appointments. Tr. 27. She did not go to the grocery store. Tr. 27. She said she did "[n]ot really" go anywhere besides medical appointments, though sometimes she would go see a friend, and "[w]e went to the lake once." Tr. 27.

Plaintiff testified that she was taking Oxycodone for pain, gabapentin for nerve pain, lamotrigine for anxiety and depression, metformin for polycystic ovarian syndrome, and Otezla and Orencia for her psoriatic arthritis and psoriasis. Tr. 30. She previously got infusions of

Renflexis for her psoriatic arthritis, but it failed. Tr. 31. The only side effect from her medications was drowsiness. Tr. 31.

Plaintiff testified that she went to see a neuropsychologist about her tremors. Tr. 31. They did not determine the cause of the tremors. Tr. 31. Plaintiff testified that "the tremors themselves have mostly stopped." Tr. 31-32. They lasted for about six months and then went away, and she did not know why. Tr. 32.

Plaintiff testified that she could not work full-time because "everything's kind of worsened since the tremors." Tr. 32. She already had psoriasis, but she developed psoriatic arthritis. Tr. 32. She had constant pain. Tr. 32. She could dislocate her wrist opening a drawer. Tr. 32. She testified, "I don't sleep very much anymore." Tr. 32. She testified that her anxiety and depression were "awful" and that she could not concentrate. Tr. 32. She testified that she used to read books but could no longer do so because she lost track after a couple of pages. Tr. 32. Her hands became so swollen from arthritis that she could not type. Tr. 33. She needed to change positions constantly and could not sit or stand for long. Tr. 33.

Plaintiff testified that on a typical day, she would sit up and stretch. Tr. 34. She fed the family pet unless her hands were swollen, in which case her father would do it. Tr. 34. She would take her medication and have a protein shake, and then listen to audiobooks or watch TV. Tr. 34. She took a nap sometime during the morning. Tr. 34. Her husband had to help her put her bra on. Tr. 34. She could sometimes make a simple meal for herself, but her father usually prepared meals. Tr. 34. In her function report, submitted in November 2018, she wrote that she did not help care for the family pets. Tr. 280. She also wrote in her function report that intense pain limited her ability to dress, bathe, care for her hair, shave, and feed herself. Tr. 281.

Plaintiff wrote in her function report that she did not need reminders to take care of personal needs, and she used alarms on her phone to remind herself to take her medication, or her spouse would remind her. Tr. 281. She could shop online. Tr. 282. She could handle her finances, except that memory issues interfered with keeping track of amounts when counting change. Tr. 283. She wrote that she did not handle stress or changes in routine well because of her pain and anxiety. Tr. 285.

Plaintiff testified that she had some home exercises assigned by a physical therapist and she did them on her own. Tr. 35. She used ice or heat to help with the pain at least a couple of times a week. Tr. 35. She changed positions all day long to try to get comfortable. Tr. 35. She needed to lie down for about an hour at least a few times a day. Tr. 35-36. The main purpose was to rest, but she would usually fall asleep once in the late morning. Tr. 36. She indicated in her function report that she had trouble with lifting, walking, climbing stairs, squatting, sitting, bending, kneeling, standing, reaching, and using her hands, as well as understanding, memory, concentration, and completing tasks. Tr. 284.

The ALJ found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" Tr. 51. The ALJ discounted Plaintiff's testimony about her physical impairments based on improvement with treatment, but did not discuss her mental impairments in formulating the RFC. Tr. 51-52.

A.    Improvement with Treatment

The ALJ found that Plaintiff's physical conditions improved with treatment. Tr. 51-52. Relevant factors for the ALJ to consider when evaluating symptom testimony include "[t]he

type, dosage, effectiveness, and side effects of any medication" the plaintiff takes to alleviate symptoms, as well as treatment besides medication that relieves symptoms, and other measures used to relieve pain or other symptoms. 20 C.F.R. § 404.1529(c)(3)(iv)-(vi). "[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017). *See also Kitchen v. Kijakazi*, 82 F.4th 732, 739 (9th Cir. 2023) (holding that the ALJ reasonably discounted the claimant's symptom testimony based on "a gradual improvement in his functioning with prescribed medication and psychotherapy sessions").

The ALJ found that Plaintiff's tremors were under control by October 2018. Tr. 52. She noted that Plaintiff testified that "her tremors have subsided." Tr. 51. Plaintiff testified that "the tremors themselves have mostly stopped." Tr. 31-32. They lasted for about six months and then went away, and she did not know why. Tr. 32. Plaintiff does not challenge the ALJ's assessment of her tremors. Pl. Op. Br. 9. The ALJ reasonably concluded that the tremors resolved in six months and therefore were not disabling.

As for Plaintiff's mobility limitations, the ALJ recognized that Plaintiff "is noted to have antalgic and unsteady gait" and could walk only short distances before needing to stop. Tr. 51. The ALJ noted that Plaintiff used a walker at some appointments but stated, "there is no indication that this is prescribed." Tr. 52. She stated, "At the hearing, the claimant testified she is able to ambulate with leg braces and does not require the use of a walker or other assistive device for ambulation." Tr. 52. Plaintiff asserts that "there is no rule that a walker must be prescribed." Pl. Op. Br. 8. She states that her physical therapist prescribed a walker because Plaintiff was at risk of falling. *Id.* (citing Tr. 509-510). Defendant correctly states that "[w]hether the walker was prescribed was immaterial." Def. Br. 5. When Plaintiff was discharged from the hospital in April

2018 after her tremors were assessed, discharge recommendations stated that she needed a front wheeled walker. Tr. 510. But Plaintiff testified that her tremors were almost gone after six months and that she did not need a walker anymore, or even a cane, because her knee braces were sufficient. Tr. 25-26, 31-32. The ALJ reasonably relied on this testimony.

The ALJ limited Plaintiff to "sedentary exertional work with no climbing of ladders, ropes or scaffolds and only occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching and crawling." Tr. 51. The ALJ also confirmed with the VE that the jobs identified would allow the hypothetical individual to sit and stand to relieve pain or discomfort as needed. Tr. 39. Plaintiff does not explain how the limitations the ALJ identified are inconsistent with her level of mobility.

Plaintiff also challenges the ALJ's assessment of her manipulative limitations. Pl. Op. Br. 8-9. The ALJ recognized that Plaintiff's psoriatic arthritis caused joint pain and swelling. Tr. 52. She recognized that two medications, Humira and Cosentyx, did not work. Tr. 52. She concluded that Plaintiff's treatment was ultimately successful because Plaintiff reported in February and June 2021 that Orencia helped with her symptoms. Tr. 52. The ALJ concluded, "In light of her successful treatment, the limitations to sedentary exertional work, limiting her to lifting/carrying no more than 10 pounds at a time, adequately accommodates her manipulative complaints." Tr. 52. Plaintiff counters that her treatment was only partially effective. Pl. Op. Br. 8-9 (citing Tr. 1334-1337).

In May 2018, Plaintiff could not do alternating hand movements after several attempts. Tr. 636. She had her first visit with a rheumatologist in July 2018. Tr. 968. In September 2018, she reported radiating pain and trouble fastening her undergarment and brushing her hair. Tr. 655. In November 2018, Plaintiff went to the emergency room for left wrist pain with swelling.

Tr. 886. In December 2018, she reported that her wrist pain was worse on some days and better on others, and that the swelling came and went. Tr. 671. She reported numbness in her fingers. Tr. 677. She wore braces on her wrists. Tr. 678.

In February 2019, Plaintiff reported some improvement in her symptoms with Arava, but she still had arthralgia in her shoulders, wrists, and knees. Tr. 960. She was using morphine for the pain. Tr. 960. In April 2019, she reported joint pain and synovial swelling, and was taking narcotic pain medication. Tr. 956. In June 2019, she reported improvement since her previous visit after two infusions of Renflexis. Tr. 952. In September 2019, her pain and psoriasis improved with an increased dose of Renflexis. Tr. 948. However, in December 2019, Plaintiff reported that the last infusion of Renflexis did not help at all. Tr. 944. Her hands, wrists, knees, and ankles were very sore and swollen. Tr. 944. Her provider switched to Humira. Tr. 938. In May 2020, Plaintiff reported that Humira was not working. Tr. 1354. She had very active psoriasis. Tr. 1354. Her provider switched to Cosentyx. Tr. 1356. In July 2020, Plaintiff reported that Cosentyx only slightly improved her psoriasis and did not improve her joint pain. Tr. 1350.

Plaintiff's provider switched her to Orencia, and in November 2020, Plaintiff reported that the new medication helped with swelling in her hands. Tr. 1342. In February 2021, she reported less swelling and arthralgia in her hands, but her psoriasis was grossly unchanged. Tr. 1338. She had trace synovial swelling. Tr. 1340. She started Otezla for her psoriasis. Tr. 1340. In June 2021, Plaintiff reported that Orencia decreased swelling and arthralgia in her hands. Tr. 1334. She reported that her "psoriasis is better with Otezla use but recent lifetime stress caused minor psoriasis flare." Tr. 1334. She expressed a desire to continue her medications and said, "I have good days now." Tr. 1334. The ALJ did not err in concluding that Plaintiff's psoriatic arthritis and associated pain and swelling in her hands (and other joints) improved with treatment

once she began taking Orencia and Otezla. Thus, she did not err in discounting Plaintiff's testimony about the degree to which she was limited in handling and fingering.

B.    Mental Health Conditions

The ALJ did not discuss Plaintiff's mental health conditions in formulating the RFC or include any limitations based on those conditions in the RFC. She found Plaintiff's generalized anxiety disorder and major depressive disorder non-severe. Tr. 48. She found that these conditions caused only mild limitations in the four broad functional areas. Tr. 48-49. Plaintiff does not challenge this finding. Instead, she argues, "Even if the ALJ ultimately found Plaintiff's mental impairments to be non-severe, the ALJ still was required to consider these medically determinable impairments in forming the RFC." Pl. Op. Br. 9. She argues that her impairments (though it is unclear whether mental or physical or both) would cause her to be absent from work more than twice per month or off-task more than 10 to 15 percent of the workday. *See id.* at 10.

Defendant argues that the ALJ did not need to incorporate any mental limitations into the RFC because she properly found that Plaintiff's mental impairments were non-severe and only mildly limiting at step two. Def. Br. 9. Defendant relies on *Woods v. Kijakazi*, 32 F.4th 785, 794 (9th Cir. 2022); *Sanchez v. Comm'r of Soc. Sec. Admin.*, No. CV-21-01709-PHX-DLR, 2023 WL 6119631, at *2 (D. Ariz. Sept. 19, 2023); and *Pugh v. Kijakazi*, No. 2:20-cv-02255, 2022 WL 1782517, at *5 (E.D. Cal. June 1, 2022). In *Woods*, the ALJ found that the claimant was mildly limited in two of the functional areas, and had no limitations in the other two areas. 32 F.4th at 794. The ALJ included no mental limitations in the RFC. *Id.* The Ninth Circuit affirmed, stating that the claimant had failed to identify evidence the ALJ did not consider or explain why the record did not support the ALJ's findings about her limitations. *Id.* The Ninth Circuit held

that the ALJ reasonably rejected more severe limitations prescribed by one doctor and found that the rest of the record did not show significant complaints. *Id. Sanchez* and *Pugh* are similar.

In finding Plaintiff mildly limited in understanding, remembering, or applying information, the ALJ relied on Plaintiff's statement in her function report that she could follow written and spoken instructions "okay depending on what the instructions are." Tr. 48 (citing Tr. 284). The ALJ noted that Plaintiff was not found to have impaired recent or remote memory on examination. Tr. 48 (citing Tr. 520, 829, 1070, 1166, 1303, 1446). She also noted that Plaintiff had indicated understanding of treatment plans and the ability to make medical decisions. Tr. 48. Plaintiff does not challenge this evidence. It supports the finding that no limitation in this area was necessary in the RFC.

In finding Plaintiff mildly limited in interacting with others, the ALJ recognized Plaintiff's statement in her function report that she occasionally had trouble getting along with others when they did not understand her limited abilities or pain levels. Tr. 48 (citing Tr. 284). The ALJ noted that Plaintiff reported living with a friend in addition to her husband and that she testified that she went shopping with a friend. Tr. 48. She also relied on visit notes describing Plaintiff as pleasant and cooperative at her medical appointments. Tr. 48 (citing Tr. 463, 519, 795, 1003, 1076, 1272, 1454, 1513). Plaintiff does not challenge this evidence. Particularly in light of the evidence of improvement in her conditions, it supports the finding that no limitation in this area was necessary in the RFC.

In finding Plaintiff mildly limited in her ability to concentrate or maintain pace, the ALJ noted that while Plaintiff reported difficulty with concentration in her function report and treatment notes, on examination she had adequate attention and concentration. Tr. 48 (citing Tr. 284, 804, 1053, 1170, 1410). "When objective medical evidence in the record is *inconsistent*

with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022). To the extent that Plaintiff's concentration issues were related to her pain, the ALJ also reasonably found that Plaintiff's pain improved. The record supports finding that no limitation in this area was necessary in the RFC.

In finding Plaintiff mildly limited in her ability to adapt or manage herself, the ALJ recognized Plaintiff's testimony that her pain prevented her from completing household chores. Tr. 48-49. The ALJ noted that Plaintiff could shop online and manage her finances, but reported difficulty reading books because of memory and concentration issues, and difficulty handling stress and changes in routine. Tr. 49. She also noted that Plaintiff testified that she worked part time from home. Tr. 49. She concluded that Plaintiff's activities of daily living supported only mild limitations. Tr. 49. Plaintiff does not challenge the ALJ's assessment of her activities. As discussed above, the ALJ reasonably concluded that Plaintiff's memory and concentration were less limited than she claimed. The ALJ also reasonably concluded that Plaintiff's pain improved with treatment. Treatment records show that in 2021, Plaintiff reported that medication improved her pain, and she could perform common tasks of daily living. Tr. 1211, 1222. This was an improvement from 2020, when she reported that she could not perform common tasks of daily living. Tr. 1235, 1245, 1255, 1261, 1267, 1277, 1284. The record supports finding that no additional limitation in this area was necessary in the RFC.

Plaintiff also notes that her medications cause drowsiness and states, "the ALJ did not include any limitations in the RFC finding to account for Plaintiff's distraction due to pain, the side effects of her medications, or the deficits in concentration resulting from her sleep apnea." Pl. Op. Br. 9. As discussed, the ALJ reasonably concluded that Plaintiff's pain was less limiting than she alleged and that her concentration was better than she alleged. With respect to

drowsiness, Plaintiff testified that drowsiness was the only side effect of her medications. Tr. 31. She also testified that she needed to lie down to rest. Tr. 35. She testified that lying down was mostly just for resting, but she usually did fall asleep in the late morning. Tr. 36. Plaintiff does not explain what limitation should have been included in the RFC based on this testimony. While she testified that she ended up falling asleep if she lay down, she did not testify that she needed a nap to get through the day or that she could not stay awake if she was sitting up. The ALJ did not err in failing to include limitations related to drowsiness. Finally, Plaintiff agrees with the ALJ's conclusion that her depression "appears to be correlated with her physical pain and is exacerbated by situational stressors." Pl. Op. Br. 9 (citing Tr. 48-49). To the extent that Plaintiff's symptoms improved with medication, Plaintiff's depressive symptoms would also improve. *See* Def. Br. 8-9.

Plaintiff argues that her symptom testimony supports finding that she would be absent from work more than twice per month or off-task more than 10 to 15 percent of the workday, either of which would preclude competitive employment. Pl. Op. Br. 10 (citing Tr. 40). She does not explain how her testimony supports these limitations. Plaintiff's attorney's questioning of the VE at the hearing does not establish what symptoms support these limitations. *See* Tr. 40. Plaintiff has not shown that her mental or physical impairments would cause these limitations. The ALJ did not err in her assessment of Plaintiff's mental health conditions or by failing to include mental limitations in the RFC. Overall, the ALJ did not err in her assessment of Plaintiff's symptom testimony.

## II. Medical Opinion Evidence

Plaintiff argues that the ALJ erred in rejecting the medical opinion of Dr. Dominik Sokalski, her treating rheumatologist. Pl. Op. Br. 5. For claims filed on or after March 27, 2017,

ALJs are no longer required to give deference to any medical opinion, including treating source opinions. Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c. Instead, the agency considers several factors. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). These are: supportability, consistency, relationship to the claimant, specialization, and "other factors." 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). The "most important" factors in the evaluation process are supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

Under this framework, the ALJ must "articulate . . . how persuasive [they] find all of the medical opinions" from each doctor or other source. 20 C.F.R. §§ 404.1520c(b), 416.920c(b)(2). In doing so, the ALJ is required to explain how supportability and consistency were considered and may explain how the other factors were considered. 20 C.F.R §§ 404.1520c(b)(2), 416.920c(b)(2). When two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ is required to explain how the other factors were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3). "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." Woods, 32 F.4th at 792.

Dr. Sokalski assessed Plaintiff's RFC on December 19, 2019. Tr. 1157-1158. He focused on limitations from Plaintiff's psoriatic arthritis and psoriasis, deeming her prognosis "fair/poor." Tr. 1157. Dr. Sokalski opined that Plaintiff could only lift under 10 pounds. Tr. 1157. She could stand and/or walk for under 2 hours in an 8-hour workday. Tr. 1157. She needed to periodically alternate sitting and standing to relieve pain or discomfort. Tr. 1157. She was limited in her ability to push and/or pull in both her upper and lower extremities. Tr. 1157. The limitations

came from her active psoriatic arthritis with inflamed finger joints, wrists, knees, and ankles. Tr. 1157. Dr. Sokalski opined that Plaintiff could never climb ramps, stairs, ladders, ropes, or scaffolds, and could never balance, stoop, kneel, crouch, or crawl. Tr. 1157. Dr. Sokalski opined that Plaintiff was limited in her ability to reach, handle, and finger. Tr. 1158. He opined that she should avoid all exposure to hazards. Tr. 1158. He stated that Plaintiff "has severe psoriatic arthritis so far poorly responsive to treatment. Her prognosis is FAIR/POOR." Tr. 1158.

The ALJ stated that Dr. Sokalski's opinion was "not persuasive because it is vague, old and not supported by the medical evidence of record." Tr. 53. The ALJ explained:

> The opinion is vague with respect to limitations. Dr. Sokalski has merely checked boxes indicating the claimant is limited in reaching, handling and fingering, but he does not describe the limitation in functional terms. This is problematic because the opinion is dated December 19, 2019. The claimant's subsequent treatment records show improvement with the use biological medications (18F). This improvement is not reflected in the opinion. Finally, the claimant's treatment records lack objective medical evidence to support manipulative limitations. Dr. Sokalski had access to the claimant's normal imaging and normal electrodiagnostic testing but does not discuss these in his opinion. Rather, his opinion appears to be base don't he [sic] claimant's subjective allegations prior to the use of biologic medications.

Tr. 53.

Plaintiff argues that Dr. Sokalski's opinion is not old. Pl. Op. Br. 6. She points out that the state agency doctors gave their opinions—which the ALJ found persuasive—in September 2019 and March 2020, fairly close in time to Dr. Sokalski's opinion. *Id.* (citing Tr. 74, 112-113). Plaintiff then argues that even if her conditions improved, her "alleged onset date of disability was 4/24/18, which means there was a 20-month period from then through the date of Dr. Sokalski's opinion during which the doctor opined she had disabling limitations." *Id.* Defendant counters that the ALJ reasonably discounted Dr. Sokalski's opinion as outdated because "Plaintiff's symptoms later responded to treatment." Def. Br. 14-15. As discussed above, Plaintiff's psoriatic arthritis did not respond well to several medications—including during the

time when Dr. Sokalski offered his opinion—but it later improved with treatment. The ALJ

reasonably concluded that Dr. Sokalski's opinion was not persuasive because it was based on an

outdated assessment of Plaintiff's conditions. The Ninth Circuit has held that an ALJ may

discount a medical opinion rendered before the date of medical improvement. *Rolston v. Astrue*,

*298 F. App'x 661, 662 (9th Cir. 2008)*. The Ninth Circuit has also held that where a claimant

alleges mental health conditions that wax and wane, an ALJ must consider whether a claimant is

disabled for part of the relevant period even if the claimant ultimately improves and is no longer

disabled. *Smith v. Kijakazi*, 14 F.4th 1108, 1115-16 (9th Cir. 2021) (holding that ALJ erred in

fully rejecting opinions of doctors who examined the claimant earlier in the relevant period

because they were reliable as to the earlier part of the relevant period). But even if that reasoning

applies equally to Plaintiff's psoriasis and psoriatic arthritis, the ALJ's error in rejecting Dr.

Sokalski's opinion as old was harmless because the ALJ identified other valid reasons to reject

the opinion.

Plaintiff next argues that Dr. Sokalski's opinion was not vague. Pl. Op. Br. 6. She states,

"His opinion clearly established that Plaintiff could not do the sitting, standing, and walking

required to sustain a full-time work day, rendering it unnecessary to determine the precise extent

of Plaintiff's manipulative limitations." *Id.* Plaintiff is mistaken. Defendant correctly asserts that

"Dr. Sokalski's opinion did not 'clearly establish' that Plaintiff could not sustain a full workday."

Def. Br. 16. Dr. Sokalski opined that Plaintiff could stand or walk for under two hours in a

normal workday and that she needed to alternate sitting and standing, but he did not indicate how

long Plaintiff could sit in a normal workday. Tr. 1157. And while he opined that Plaintiff's

ability to reach, handle, and finger was limited, he did not explain the degree of limitation. Tr.

1158. The ALJ limited Plaintiff to sedentary work. Tr. 50. The ALJ also confirmed with the VE

that the jobs identified would allow the hypothetical individual to sit and stand to relieve pain or

discomfort as needed. Tr. 39. The ALJ's decision appears to be consistent with Dr. Sokalski's

opinion about Plaintiff's ability to stand, walk, and sit. Dr. Sokalski identified no limitation on

how long Plaintiff could sit, and did not explain how much she could reach, handle, or finger.

The ALJ reasonably concluded that the opinion was vague to the extent he failed to do so.

Plaintiff argues that "[i]f the ALJ felt that Dr. Sokalski's opinion was unclear as to the

extent of Plaintiff's manipulative limitations, the ALJ should have exercised her duty to fully and

fairly develop the record by recontacting Dr. Sokalski for clarification." Pl. Op. Br. 6-7.

Defendant counters that "[a]n ALJ may reasonably reject ambiguous terms like 'fair' or 'limited'

as 'inadequate for determining [residual function capacity]' because they are not useful in

describing a claimant's functional limitations." Def. Br. 16 (citing *Ford v. Saul*, 950 F.3d 1141,

1156 (9th Cir. 2020)). In *Ford*, the Ninth Circuit held that the ALJ had no duty to contact a

doctor for clarification of the term "limited" in a medical opinion where the record contained

years of medical records and multiple opinions from non-examining doctors. 950 F.3d at 1156.

The same is true here. The record contains several years' worth of records of Plaintiff's psoriatic

arthritis and psoriasis and opinions from the state agency doctors. The ALJ was not required to

contact Dr. Sokalski for clarification.

As stated above, the ALJ did not err in concluding based on the medical records that

Plaintiff's psoriasis and psoriatic arthritis improved with treatment. Plaintiff points to evidence

that her condition persisted. Pl. Op. Br. 7. While the June 2021 treatment note showed that

Plaintiff still had active psoriatic arthritis and some swelling, it also showed that her condition

improved. Tr. 1334-1337. She had only "trace synovial swelling" in her upper extremities. Tr.

1336. The ALJ did not conclude that Plaintiff's condition was cured, only that it improved. That

conclusion was reasonable. The ALJ did not err in rejecting Dr. Sokalski's opinion. As discussed below, even if the ALJ erred in failing to include handling and fingering limitations, the error was harmless because she identified jobs that exist in significant numbers in the national economy that Plaintiff could perform if she were limited to occasional handling and fingering, the limitation Plaintiff appears to believe appropriate. *See* Def. Br. 17; Pl. Reply 3, ECF 19.

## III.   Lay Witness Testimony

Plaintiff argues that the ALJ failed to properly consider the lay testimony of her spouse and father. Pl. Op. Br. 10. "Lay testimony as to a claimant's symptoms is competent evidence that the Secretary must take into account." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citation omitted); 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1) ("In evaluating the intensity and persistence of your symptoms, we consider all of the available evidence from your medical sources and nonmedical sources about how your symptoms affect you."). Under the 2017 regulations, the ALJ is not "required to articulate how [they] considered evidence from nonmedical sources" using the same criteria required for the evaluation of medical sources. 20 C.F.R. §§ 404.1520c(d), 416.920c(d). Under the new regulations, however, the ALJ must still articulate their assessment of lay witness statements. *Tanya L.L. v. Comm'r Soc. Sec.*, 526 F. Supp. 3d 858, 869 (D. Or. 2021).

The ALJ must give reasons "germane to the witness" when discounting the testimony of lay witnesses. *Valentine,* 574 F.3d at 694. But the ALJ is not required "to discuss every witness's testimony on an individualized, witness-by-witness basis." *Molina*, 674 F.3d at 1114, *superseded on other grounds* by 20 C.F.R. § 404.1502(a). If the ALJ gives valid germane reasons for rejecting testimony from one witness, the ALJ may refer only to those reasons when rejecting similar testimony by a different witness. *Id.* Additionally, where "lay witness testimony does not

describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony," any error by the ALJ in failing to discuss the lay testimony is harmless. *Id*. at 1117, 1122.

On March 3, 2020, Plaintiff's spouse completed a third party function report. Tr. 311-320. He wrote that Plaintiff could not really stand or walk without holding onto something. Tr. 312. Her hands would swell, which made it hard to write or hold things. Tr. 312. She slept badly, which made it hard for her to concentrate. Tr. 312. She could feed the family pets. Tr. 312. She could not work, go for walks, clean the house, do laundry, make dinner nightly, drive, or take the dogs out. Tr. 313. However, her spouse later wrote that Plaintiff could do laundry, and sometimes vacuum and do the dishes. Tr. 314. It could take her five or six hours to do laundry because folding was difficult. Tr. 315. She constantly changed positions in bed because of her pain. Tr. 313. Her spouse helped Plaintiff put on her bra but otherwise she could dress herself. Tr. 313. She could bathe by holding onto the wall or using a shower chair. Tr. 313. Some days she could do her hair, and others she could not. Tr. 313. She could feed herself and use the toilet. Tr. 313. Her spouse helped her with her leg braces if they went somewhere. Tr. 313.

Plaintiff's spouse wrote that Plaintiff did not need reminders to take care of personal needs. Tr. 314. She set an alarm on her phone to remember to take her medication. Tr. 314. She could prepare her own meals, but they were mostly ready-to-eat. Tr. 314. On a bad day, it could take her three hours to prepare a meal. Tr. 314. Plaintiff went outside about two or three times per week. Tr. 315. She did not drive and could not walk long distances. Tr. 315. Her knees were unstable, so she wore her knee braces if she went out. Tr. 315. Plaintiff could shop online. Tr. 316. She could handle money. Tr. 316. She could no longer garden or read physical books, but

she could watch TV. Tr. 316-317. She needed to be accompanied when she went out. Tr. 317. She did not have problems getting along with others. Tr. 317.

Plaintiff's spouse indicated that Plaintiff had trouble lifting, standing, walking, climbing stairs, kneeling, squatting, reaching, using her hands, bending, and understanding, and also struggled with memory and concentration. Tr. 317. He did not indicate that she had trouble sitting. Tr. 317. She could lift "about 10 pounds." Tr. 318. She could walk a quarter mile without stopping and resting if she was lucky. Tr. 318. She could pay attention for about 15 minutes. Tr. 318. She finishes what she starts. Tr. 318. She follows written instructions "very well if she reads them a few times" and spoken instructions "good if repeated a few times." Tr. 318. According to Plaintiff's spouse, Plaintiff handles stress and changes in routine "ok." Tr. 319. He wrote that Plaintiff used a walker at home. Tr. 319. In a separate, undated letter, Plaintiff's spouse reiterated that Plaintiff cannot drive and that she has trouble picking things up. Tr. 351.

In a letter dated July 20, 2021, Plaintiff's father wrote that he and his wife moved to Oregon in March 2020 to help take care of Plaintiff. Tr. 350. Plaintiff's father wrote that he was with Plaintiff daily to help her with laundry, cooking, cleaning, dishes, housework, shopping, and other daily activities, and to help her in case she falls. Tr. 350. He also wrote that he took Plaintiff to her medical appointments. Tr. 350.

The ALJ wrote that the statements "were considered in formulating the claimant's residual functional capacity. Third party statements are not considered 'opinions' under current Agency rules and regulations. Accordingly, I decline to evaluate the persuasiveness of these statements." Tr. 53. Plaintiff argues that the ALJ erred in failing to provide germane reasons to discount the lay statements. Tr. 11. Defendant first argues that the germane reasons standard no longer applies. Def. Br. 18. The Court disagrees. Defendant then asserts that any error in failing

to address the statements was harmless because they "merely echoed [Plaintiff's] own claims about her symptoms and functional limitations." *Id.* at 19. Defendant's second argument is correct.

Plaintiff's spouse and father do not describe any limitations not described by Plaintiff. Their accounts largely overlap with Plaintiff's. In several respects, Plaintiff's spouse described lesser limitations than Plaintiff described in her function report, in that he indicated that Plaintiff has no trouble getting along with others, is "ok" at handling stress and changes in routine, and has no limitation in her ability to sit. *Compare* Tr. 312-320 *with* Tr. 279-286. The ALJ's error in failing to discuss the lay statements was harmless because the valid reasons for discounting Plaintiff's testimony also serve to discount the third-party statements.

## IV.    Step Five Analysis

Plaintiff asserts that the hypothetical posed to the VE was invalid because it did not include all of the necessary limitations based on her testimony, Dr. Sokalski's opinion, and the lay testimony. Pl. Op. Br. 12. Defendant counters that this is an improper derivative argument because it reiterates Plaintiff's first three assignments of error. Def. Br. 19 (citing *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008)). Defendant overstates the result in *Stubbs-Danielson*. In *Stubbs-Danielson*, the Ninth Circuit wrote, "In arguing the ALJ's hypothetical was incomplete, Stubbs–Danielson simply restates her argument that the ALJ's RFC finding did not account for all her limitations because the ALJ improperly discounted her testimony and the testimony of medical experts. As discussed above, we conclude the ALJ did not." 539 F.3d at 1175-76. Plaintiff's argument is not improper; it is repetitive. But Defendant is correct that Plaintiff's argument fails because the ALJ did not err in her assessment of Plaintiff's testimony, Dr. Sokalski's opinion, or the lay testimony.

Defendant also argues that even if the ALJ did err in failing to include manipulative limitations in the RFC, the error was harmless because one of the jobs the ALJ identified (call-out operator) requires only occasional reaching, handling, and fingering, and there are 258,000 positions in the national economy. Def. Br. 17-18. The ALJ asked the VE if the hypothetical individual could perform any of the identified jobs if they were limited to only occasional handling and fingering. Tr. 39. The VE testified that the call-out operator job and the semiconductor bonder job as typically performed could be performed. Tr. 39. The VE testified that there were 258,000 jobs as a call-out operator in the national economy and 115,000 semiconductor bonder jobs in the national economy. Tr. 38. Plaintiff does not challenge the VE's testimony about the number of jobs available.

Plaintiff erroneously asserts that the ALJ did not ask the VE to consider the effect of a limitation to occasional handling and fingering. Pl. Reply 3. Plaintiff then points out that her prior job as a receptionist and the jobs of charge account clerk and semiconductor bonder require at least frequent handling and fingering. *Id.* The VE testified that as typically performed, the job of semiconductor bonder requires only occasional handling and fingering. Even if that job is excluded, Defendant is still correct that any error is harmless because the job of call-out operator exists in significant numbers in the national economy.

Defendant argues that the 258,000 call-out operator jobs are a "significant number." Def. Br. 17 (citing *Gutierrez v. Commissioner of Social Security Admin.*, 740 F.3d 519, 527-29 (9th Cir. 2014) (holding that 25,000 jobs nationally constituted a significant number of jobs)). The Court agrees with Defendant. The call-out operator job on its own is sufficient. *See Lemauga v. Berryhill*, 686 F. App'x 420, 421 (9th Cir. 2017) (where ALJ erred in relying on two of three jobs identified, the third job could render the error harmless if it existed in sufficient numbers in

the national economy). Thus, even if the ALJ erred in failing to limit Plaintiff to occasional handling and fingering, the error was harmless because the ALJ identified jobs that Plaintiff could still perform that exist in significant numbers in the national economy. In conclusion, the ALJ did not harmfully err in concluding that Plaintiff is not disabled.

## CONCLUSION

Based on the foregoing, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

DATED:_____February 7, 2024__.



_____
MARCO A. HERNANDEZ
United States District Judge